IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRYSOULA KOMIS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. PEREZ, Secretary, | : | |
| U.S. Department of Labor,[1] | : | No. 11-6393 |
| Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**  June 16, 2014
**U.S. Magistrate Judge**

    Plaintiff Chrysoula Komis, a former employee of the Occupational Safety and Health Administration ("OSHA"), has filed an Amended Complaint against Thomas E. Perez, Secretary of the United States Department of Labor ("DOL"), alleging DOL violated Title VII of the Civil Rights Act because OSHA managers retaliated against her for filing complaints against them. See Am. Comp. (doc. 14).  She contends the retaliation occurred in two ways.  See id.; see also Pl.'s Resp. to Mot. for S.J. (doc. 46-2) at 1.  First, OSHA management failed to hire her as an Assistant Regional Administrator ("ARA").  Second, she was subject to a retaliatory hostile work environment because of myriad actions, resulting in her constructive discharge in 2008.

    DOL seeks summary judgment, asserting Komis cannot prove that any of the alleged conduct by OSHA management was retaliatory under Title VII.  See Def.'s Mot. for S.J. Br. (doc. 37); Def.'s Statement of Facts (doc. 38).  Because Komis presents sufficient evidence to present questions of material fact related to her claims, DOL's motion is denied.  The case will turn on who the jury believes.  Depending on which version of the evidence is credited, Komis is

---

[1] Although Komis filed her complaint against Hilda Solis, Thomas Perez has since replaced Solis as the Secretary of the U.S. Department of Labor.  Perez, therefore, is now the proper defendant.  See Fed. R. Civ. P. 25(d); see also 42 U.S.C. § 405(g).

either: (1) a disgruntled and poor-performing employee who failed to adjust to necessary changes within her department and avail herself of opportunities to redeem herself; or (2) an employee victimized by vengeful management angered by her complaints of discrimination.[2]

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party. See Ray v. Warren, 626 F.2d 170, 173 (3d Cir. 2010). If reasonable minds could conclude that there are sufficient facts to support a plaintiff's claims, summary judgment should be denied. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Retaliatory Failure to Hire Claim

"To establish a prima facie case of retaliation under Title VII, [Komis] must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took a materially adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).

If Komis establishes a prima facie case, the burden shifts to DOL to demonstrate a legitimate, non-retaliatory reason for the adverse employment action. Id. at 342. If successfully asserted, the burden shifts back to Komis to show that DOL's explanation is false or pretextual and retaliation was the real reason for the adverse employment action. Id. Komis must produce some evidence from which a jury could reasonably reach these conclusions. Id.

---

[2] Because I write solely for the parties, who are familiar with the facts, I will not review them all here. The factual history is a long and tortured one that must be simplified for the jury during the five-day trial schedule.

DOL does not contest Komis' prima facie case of retaliation based on her failure to be hired for the ARA position. Rather, it asserts that OSHA had a legitimate, non-retaliatory reason for not hiring Komis, and Komis cannot establish pretext. See Mot. for S.J. Br. at 13-17.

DOL argues that Richard Soltan, OSHA's Region III Director, hired Maureen Russo, an attorney in the Solicitor's Office, rather than Komis or any other OSHA employee, because he believed Russo was the best qualified for the position. Soltan "wanted a candidate with a fresh, outside perspective to run the Federal and State Operations section" because he was "concerned that there was a lot of disagreement, hostility, and personality conflicts among the employees in the Federal and State Operations section, including [Komis]." Soltan Dec. ¶ 7. He "believed it would have been difficult, if not impossible, for [Komis], or any other [of] the internal candidates, to supervise the other employees in the division and insure that the Federal and State Operations section functioned effectively." Id.

Komis claims Soltan's explanation is pretextual because she was more qualified than Russo based the vacancy announcement, which demanded an understanding of technical safety and occupational health matters. See Pl.'s Br. (doc. 46-2) at 7; Soltan Dec., Exs. 1, 2 (internal and external vacancy announcements). She explains Russo had only legal experience with such matters whereas her technical health and safety experience was extensive. See Resp. Br. at 8-9; Russo Dec. ¶ 4. Although Komis admits "[t]here was a lot of hostility toward [her by co-workers] for filing retaliation complaints" against OSHA management, Pl.'s Resp. to Def.'s Statement of Undisputed Facts (doc. 46-1) ¶ 61, she contends management unlawfully used the hostility arising from her protected activity as a reason not to hire her. Resp. Br. at 10. She also states that before she filed complaints of retaliation in 2003, Soltan repeatedly said she was doing

3

fine, and her performance reviews failed to mention any issues of concern with co-workers. See id.; Komis Dec. ¶¶ 35-37; Pl.'s Ex. 37 (Komis' Annual Performance Reviews 1999-2002).

Komis has presented sufficient evidence to raise a question of material fact concerning the credibility of Soltan's proffered non-retaliatory reasons for hiring Russo. Viewing the evidence in the light most favorable to Komis, a reasonable jury could conclude that Soltan was using the unaddressed hostility within the office towards Komis, who up until that time had good performance evaluations, as a pretext for excluding Komis from the hiring process because she had engaged in protected activity.[3]

Retaliatory Hostile Work Environment/Constructive Discharge

To establish retaliation predicated on a hostile work environment, Komis must show: (1) she was retaliated against because of protected activity; (2) a reasonable employee would have found the alleged retaliatory actions materially adverse; (3) the retaliatory conduct detrimentally affected her; (4) the conduct would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability. See Jensen v. Potter, 435 F.3d 444, 448-49 (3d Cir. 2006), overruled in part by Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006); Hare v. Potter, 220 F. App'x 120, 131-32 (3d Cir. 2007).

For the first element, Komis must establish a causal link between DOL's conduct and her protected activity. This may include a "broad array of evidence," including signs of a retaliatory animus, a "temporal proximity" between the protected activity and the alleged retaliatory action, inconsistencies in the employer's articulated reasons for terminating the employee, and a pattern of antagonism in the intervening period. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503

---

[3] Although Komis emphasizes her unpopularity with her co-workers and management's failure to resolve those personnel issues, those facts, without more, cannot establish retaliation. Rather, Komis must establish that her managers retaliated against her solely because of her protected activity.

4

F.2d 217, 232 (3d Cir. 2007); Jensen, 435 F.3d at 450.  This analysis also must be based on the totality of circumstances, rather than each individual incident.  Jensen, 435 F.3d at 450 ("the discrimination analysis must concentrate not on individual incidents, but on the overall scenario") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990)); Hare, 220 F. App'x at 132 (same).

     The second element requires Komis to show that DOL's actions would have dissuaded an objectively reasonable person from making or supporting a complaint against the employer. Burlington Northern, 548 U.S. at 68.  Komis must show that she experienced more than trivial harm.  Id.  "[P]etty slights, minor annoyances, and simple lack of good manners" are not sufficient to deter a reasonable person from reporting misconduct.  Id.  At the same time, "the significance of any given act of retaliation will often depend upon the particular circumstances." Id. at 69.  A one-time denial of a training opportunity may be "a nonactionable petty slight," but a repeated denial of training opportunities that would "contribute significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."  Id.

     To prove constructive discharge based on a hostile work environment, Komis must show that her working conditions were "so intolerable [that an objectively] reasonable person would have felt compelled to resign."  Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004); see also Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169-70 (3d Cir. 2013) ("[A]n employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge.").  Whether an employee was forced to resign may be based on several factors, including, "whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position,

subject to altered job responsibilities, or given unsatisfactory job evaluations." Mandel, 706 F.3d at 169-70.  Whether the employee made any complaints or requests for a change in supervision also is pertinent to the analysis.  Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993).

Komis alleges OSHA management retaliated against her in numerous ways after she began complaining of misconduct in the summer of 2003, creating a hostile work environment that lasted more than five years and forced her to resign.  See Am. Compl. ¶¶ 6-8; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 12.  DOL argues that it is entitled to summary judgment because Komis cannot establish that the alleged wrongful conduct was retaliatory, materially adverse, or so intolerable to have compelled a reasonable person to resign.  DOL, however, relies almost exclusively on its own version of events,[4] and addresses each incident of alleged misconduct individually, rather than viewing the cumulative effect of the numerous incidents.  When the evidence of misconduct is viewed in favor of Komis,[5] and considered cumulatively as part of a continuing course of retaliatory conduct, the following genuine disputes of material fact exist:

---

[4] DOL cites to Komis' deposition in seeking to dismiss Komis' claims concerning the denial of leave and her constructive discharge.  Komis' denial of leave claim, however, relates to the manner in which she was allowed leave, rather than actual denial of leave.  See Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 357-58; Komis Dec. ¶ 181.  Furthermore, although Komis' deposition testimony contradicts some elements of her constructive leave claim, this claim may be supported by other parts of her hostile work environment claim.  See infra n. 6.

[5] In response to DOL's motion, Komis relies on her declaration of the facts, as well as various other exhibits, including deposition testimony and documents submitted with regard to her complaints of unlawful retaliation.  Where Komis has offered mere speculation or conclusory assertions as to why OSHA management took certain actions against her, she has not been credited.  See Lexington Ins. Co. v. Western Pa. Hosp., 423 F.3d 318, 333 (3d Cir. 2005) (speculation and conjecture may not defeat a motion for summary judgment).  However, where Komis has offered a different version of the facts than DOL, her version has been accepted for purposes of Defendant's motion.  See Ray, 626 F.2d at 173; Pl.'s Resp. to Def.'s Statement of Facts.

- Whether OSHA management formerly notified Komis that it was permanently removing her from industrial hygiene work in late 2003 in response to Komis' protected activity in the summer of 2003?

- Whether the coordinator of the Voluntary Protection Program ("VPP") was primarily a clerical position performed by lesser grade employees, and OSHA management reassigned Komis to that position in late 2003 in response to her protected activity?

- Whether Komis was harshly disciplined in comparison to other similarly situated employees for engaging in protected activity rather than legitimate business reasons?[6]

- Whether Komis received lower performance ratings that hindered her chances for promotion because of her protected activity?

- Whether Komis, in contrast to other similarly situated employees, was denied the opportunity to attend training courses that would have been helpful to her job and professional development because of her protected activity?

- Whether OSHA management failed to properly investigate and resolve alleged misconduct against Komis by other OSHA employees because of Komis' protected activity?

- Whether Komis, in contrast to other similarly situated employees, was denied the opportunity to work from home or a different location because of her protected activity?

---

[6] DOL argues Komis failed to administratively exhaust her claims related to the proposed 14-day suspension in 2007. However, because these claims fell within the scope of her complaints related to the implementation of a performance improvement plan and her constructive discharge, she has properly exhausted them. See Pl. Ex. 18, EEO Complaint K-7, Investigative Aff., 9, 24; Mandel, 706 F.3d at 163 (parameters of civil action are defined by scope of EEOC investigation which can reasonably be expected to grow and include new acts occurring within pendency of EEOC proceedings).

- Whether OSHA management interfered with Komis' VPP re-certification of the Delaware City OxyChem plant, which impacted her mid-year performance review, because of her protected activity?
- Whether OSHA management removed, rescinded, or reassigned VPP fieldwork assignments from Komis because of her protected activity?

Viewed individually, Komis' allegations would likely fail to satisfy her burden of showing causation and material adversity. As a whole, however, a reasonable jury could find that DOL's conduct was retaliatory and materially adverse. See Hare, 120 F. App'x at 132; see also Velez v. QVC, Inc., 227 F. Supp. 2d 384, 410 (E.D. Pa. 2002) (courts "should not carve the work environment into a series of discrete incidents and then measure the harm according to each episode") (citing Jackson v. Quanex Corp., 191 F.3d 647, 660 (6th Cir. 1999)). Moreover, although Komis' evidence related to her constructive discharge claim is barely adequate, I cannot as a matter of law say that no reasonable juror could find that her working conditions were so intolerable to merit resignation.[7]

Summary judgment is denied with regard to Komis' hostile work environment/constructive discharge claim.

---

[7] As part of her constructive discharge claim, Komis contends she was threatened with being discharged and/or OSHA management told other federal employees she would be terminated. See Am. Compl. ¶ 45; Pl.'s Resp. Br. at 15-16; Resp. to Statement of Facts ¶ 189; Komis Dec. ¶ 100. Komis, however, does not present sufficient evidence to establish a threat of termination. The evidence she cites shows only that a notice of removal, which she could contest, was being prepared. See Pl. Ex. 68. She also presents no admissible evidence about statements made concerning her termination. Nevertheless, Komis may establish that she was constructively discharged if she can prove her other claims of misconduct, including her involuntary transfer to a less desirable position, the reassignment of desirable job responsibilities, and unwarranted discipline and evaluations. See Mandel, 706 F.3d at 169-70.